RHODE ISLAND HOSPITAL TRUST CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7913. Promulgated October 7, 1927.

1. The amount of $31,539.38, representing interest on notes of political subdivisions of Rhode Island and Massachusetts, was erroneously reported by the petitioner as taxable income for the fiscal period ended October 31, 1921.

2. The petitioner set up a reserve for bad debts during its fiscal year 1919 in the amount of $600,000 and made additions thereto in the amounts of $400,000 and $200,000 for the fiscal years 1920 and 1921, respectively. In its income-tax return for the fiscal year 1921 it deducted from gross income $100,000 on account of bad debts ascertained to be worthless and charged off during the year, and in addition the $200,000 increase to its reserve for the fiscal year 1921. *Held*, that the petitioner was entitled to the deduction of debts ascertained to be worthless and charged off during the year, but not to the deduction of $200,000 representing the addition to its reserve for bad debts.

3. The evidence fails to establish that the petitioner is entitled to a deduction for the fiscal year ended October 31, 1921, of $87,500 alleged to represent bad debts recoverable only in part.

*Ferdinand Tannenbaum, Esq.*, and *Edmund S. Rex, Esq.*, for the petitioner.

*Harold Allen, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits tax for the fiscal year ended October 31, 1921, in the amount of $67,916.46. The petitioner alleges that in determining the deficiency the respondent erred in the following particulars: (1) In including in its taxable income for the period in question the amount of $31,539.38, which amount, it is alleged, represents tax-exempt interest derived from notes of political subdivisions of the States of Rhode Island and Massachusetts; (2) in disallowing as a deduction from gross income the amount of $200,000 representing the addition during the period in question to its reserve for bad debts; (3) in disallowing as a deduction from gross income the amount of $87,500, representing debts recoverable only in part and so charged off under the circumstances outlined below.

### FINDINGS OF FACT.

The petitioner is a trust company and conducts a general banking business at Providence, R. I. On October 31, 1921, it had outstanding over $51,000,000 in accounts receivable, loans, notes, mortgages and bonds. Of this amount $26,610,720.16 represented accounts and bills receivable and call loans.

11340°—28——38

In the fiscal year ended October 31, 1919, the petitioner, at the direction of its president, set up a reserve for bad debts in the amount of $600,000, which reserve, for want of a better name, was called "reserve for depreciation," and during the fiscal year 1920 it increased this reserve by the amount of $400,000 so that the total reserve on October 31, 1920, amounted to $1,000,000. On April 30 and October 31, 1921, respectively, the petitioner added $100,000 to its reserve for depreciation. The original reserve and all additions thereto were set up at the direction of petitioner's president, who on account of general business conditions prevailing at that time anticipated that it would suffer some heavy losses on account of notes and accounts receivable, it having outstanding at that time about $23,000,000 in short-time notes, practically all of which were contracted during the fiscal year 1921. No addition was made to its reserve fund for depreciation during the fiscal years 1922 and 1923. In its income-tax return for the fiscal period 1921, the petitioner claimed as a deduction from gross income the amount of $200,000 representing the addition to its reserve for depreciation for that year, which deduction was disallowed by the Commissioner. In addition to the deduction of $200,000 claimed by the petitioner, it ascertained to be worthless and charged off in the fiscal year 1921 the amount of $100,000 represented by bad debts, which amount the Commissioner allowed as a deduction.

Among the petitioner's assets on October 31, 1921, were $100,000 of Eastern Massachusetts Street Railway Co. adjustment trustees' 3-year 6 per cent notes (hereinafter called adjustment notes) due in 1922, and acquired at a cost of $98,000 and in respect of which the petitioner claims a deduction for the year 1921 in the amount of $87,500, representing bad debts recoverable only in part.

The petitioner acquired the adjustment notes in the following manner: In the year 1915 it purchased $100,000 of the original issue of 5 per cent gold notes of the Massachusetts Electric Companies, due April 1, 1918, for $98,000. The Massachusetts Electric Companies was the holding company of a number of street and interurban railway companies, the principal operating company being the Bay State Street Railway Co.

In 1918 properties of the holding company were under Federal court receivership. Under a reorganization plan dictated by the Commonwealth of Massachusetts, Special Act, Chapter 188, Special Acts of 1918, the Massachusetts Electric Companies, issuer of the 5 per cent gold notes, due April 1, 1918, was eliminated and the directors of the Bay Street Railway Co. were authorized to form

a new corporation, the Eastern Massachusetts Street Railway Co., hereinafter called the new company, to acquire the railways, properties and franchises of the Bay State Street Railway Co., hereinafter called the old company.

The common stock of the old company did not participate in the reorganization, and the 5 per cent gold notes of the eliminated Massachusetts Electric Companies did not become an obligation of the new company. However, certain provisions were made for the holders of the 5 per cent gold notes of the Massachusetts Electric Companies. The security holders, including the holders of the 5 per cent gold notes, due April 1, 1918, of the Massachusetts Electric Companies, entered into a plan and agreement with the reorganization managers, dated March 6, 1919, whereby it was provided for the issuance of adjustment trustees' 3-year 6 per cent notes, not by the new company, of which they were not an obligation, but by adjustment trustees who were not personally liable thereon. These adjustment trustees' 3-year 6 per cent notes were to be issued in exchange for the 5 per cent gold notes, dollar for dollar, plus accrued interest thereon to October 1, 1918, at the rate of 5 per cent per annum.

The adjustment trustees' 3-year 6 per cent notes were to be dated the first day of the month during which the principal properties were transferred to the new company. The properties were transferred some time in 1919, and on March 27, 1920, the petitioner received the adjustment trustees' 3-year 6 per cent notes due in 1922 in exchange for the 5 per cent gold notes of the Massachusetts Electric Companies.

Under the agreement of March 6, 1919, adjustment stock was provided in the face amount of $250 of adjustment stock for each $100 of adjustment trustees' notes. It was planned to sell the adjustment stock and turn over the accumulated proceeds to the note holders when the notes became due. In the event of no sale the adjustment stock was to be turned over to the holders of the notes upon the due date thereof in the above proportions, and to be accepted as a full discharge of the note. In the event of a partial sale of adjustment stock a pro rata distribution of part cash and part adjustment stock was to be made.

Under the agreement of March 6, 1919, the adjustment stock ranked fourth, being preceded by over $7,000,000 of sinking fund stock, first preferred, and preferred B stock.

The adjustment trustees' 3-year 6 per cent notes were not quoted and the interest thereon was not paid at any time. The petitioner had written down on its books of account the value of the 5 per cent

gold notes and adjustment trustees' 3-year 6 per cent notes by the following charges to its profit and loss account:

| | | |
|---|---:|---:|
| Original cost | | $98,000 |
| Written off in 1918 | $48,000 | |
| Written off in 1919 | 25,000 | |
| Written off in 1921 | 14,500 | |
| Amount written off and claimed year ended October 31, 1921 | | 87,500 |
| Book value, October 31, 1921 | | 10,500 |

The petitioner also owned some of the preferred stock issued under the reorganization plan, which it sold in April, 1921, for $13 per share. The preferred stock at the time of its sale had $12 accumulated dividends on it. In 1921 the adjustment stock was not listed and there was no market for it. Due to the fact that the adjustment stock was preceded by other securities, the concensus of opinion among business men familiar with the stock was that it had in October, 1921, only nominal value.

On November 3, 1921, the public trustees of the new company in a letter to the bondholders and stockholders, stated that:

The Public Trustees, after more than two years' association with your property, are convinced that it cannot become a financial success with its present capital structure * * *.

In February, 1922, accumulated dividends on the Preferred and Adjustment Stock of the Company will amount to $2,633,456 as shown in the following table:

| Class of stock | Dividends accrued | Annual requirements |
|---|---:|---:|
| First Preferred—to Feb. 15, 1922 | $153,840.60 | $51,280.20 |
| Sinking Fund—to Feb. 1, 1922 | 777,360.00 | 194,340.00 |
| Preferred B—to Feb. 1, 1922 | 539,730.00 | 179,910.00 |
| Adjustment—to Feb. 1, 1922 | 1,162,526.14 | 435,947.30 |

* * * under the existing conditions there is not the slightest prospect of any dividends being paid upon any class of stock for an indefinite period.

In 1922 the petitioner received the adjustment stock in exchange for the adjustment notes, and in 1925 sold the adjustment stock for $41,749.52.

The amounts written off on account of the notes (gold and adjustment) were not claimed as deductions in the original returns filed by the petitioner for the fiscal period ended October 31, 1921, but were later claimed in a protest filed with the Commissioner, such claim, however, being denied.

The petitioner loaned money to various cities and towns in Rhode Island and Massachusetts, taking their notes for the amounts loaned. Due to the fact that the petitioner handled these notes through its

regular note department, tax-exempt interest from this source in the sum of $31,539.38 was erroneously included in its taxable income for the period ended October 31, 1921.

OPINION.

Love: It is conceded by the Commissioner that the amount of $31,539.38 represented interest derived during the fiscal period ended October 31, 1921, from notes of political subdivisions of Rhode Island and Massachusetts and as such is not taxable. The petitioner erred, therefore, in including such amount in its gross taxable income. Accordingly, the petitioner's taxable income for the fiscal period ended October 31, 1921, should be reduced by the amount of $31,539.38.

The petitioner contends that, in addition to the amount of $100,000 taken as a deduction on account of bad debts ascertained to be worthless and charged off in the fiscal year 1921, and which deduction was allowed by the Commissioner, it is entitled to a deduction from gross income of the amount of $200,000 representing the addition to its reserve for bad debts for the fiscal year 1921. We can not agree with this contention.

The provision of the Revenue Act of 1921 which permits a corporation taxpayer to deduct from gross income a reserve for bad debts is section 234 (a) (5), which reads as follows:

Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

It will be noted that the above-quoted provision of the 1921 Revenue Act gives the Commissioner discretion with respect to additions to a reserve for bad debts. In the instant appeal the Commissioner permitted the petitioner to deduct from gross income for the period in question certain bad debts in the amount of $100,000 ascertained to be worthless and charged off within the taxable period. Such action on the part of the Commissioner constitutes a valid exercise of the discretion vested in him.

The evidence adduced shows that in setting up its reserve for bad debts and in making additions thereto the petitioner apparently resorted to guess work. There is no evidence with respect to its experience as to losses over a period of years upon which a reasonable reserve might be predicated.

It has been held by this Board that the petitioner can not in a given year deduct both the addition to its bad debt reserve and debts ascertained to be worthless and charged off within the taxable year.

*Appeal of Transatlantic Clock & Watch Co.,* 3 B. T. A. 1064. We approve, therefore, the respondent's determination in disallowing as a deduction from gross income for the fiscal period ended October 31, 1921, the amount of $200,000, representing the addition to its reserve for bad debts for that period.

The petitioner also contends that it is entitled to a deduction from gross income for the fiscal year 1921 of the amount of $87,500 on account of a bad debt by reason of the adjustment notes owned by it which, it alleges, were recoverable only in part.

The petitioner exchanged in 1920 the 5 per cent gold notes of the Massachusetts Electric Companies for adjustment notes due in 1922, of the same par or face value, the latter notes having as collateral thereto the adjustment stock. Assuming that this exchange complied with the provisions of section 202 (b) of the Revenue Act of 1918, and that no gain or loss occurred by reason thereof, we are of the opinion that the petitioner is not entitled to a deduction for the year 1921 on account of a debt alleged to be worthless in part.

In 1918, 1919, and 1920, the petitioner charged off certain amounts on account of the notes held by it at those times. The record is silent as to the basis upon which it made such charges. There is no evidence as to the value of the notes at the times they were written down on the books. The petitioner did not claim the amounts charged off as deductions for the reason that the Revenue Act of 1918 did not permit the deduction of part of a debt as worthless. At the close of the fiscal year 1921, the petitioner made a further charge against the notes and claimed the entire amount written off in 1921 and preceding years, to wit, $87,500, as a deduction for the year 1921.

It appears from the record that the adjustment notes were not due until 1922 and were secured by adjustment stock which had been provided for the retirement of the notes on the due date.

It further appears that the new company, issuer of the adjustment stock, was actively engaged in business and that the adjustment stock in October, 1921, was not in fact entirely worthless. In fact, the petitioner alleges that the adjustment stock had some value at that time. In *W. P. Davis v. Commissioner,* 6 B. T. A. 1267, we stated:

Petitioner's claim of a loss in 1924 is based upon the decline in the value of stock owned by him in the Cross Mountain Coal Co. * * * Its value may have fluctuated much since that time but the decline in value of property does not give rise to a deductible loss under the statute any more than does the increase of the market value of the property owned give rise to taxable income. The evidence does not show and the petitioner does not claim that the stock was worthless at the end of 1924. Until it is clearly shown that stock owned in a corporation which is still in existence and has assets is in fact worthless and

there is no probability that any portion of the investment will ever be recovered, no deductible loss under the statute has been sustained.  See *Appeal of E. O. Walgren*, 4 B. T. A. 1066; *J. J. Melick* v. *Commissioner*, 6 B. T. A. 70; *Appeal of George C. Ryder*, 2 B. T. A. 1060.  *  *  *

We think the Commissioner correctly denied the deduction claimed with respect to the adjustment notes secured by adjustment stock.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN dissents.